**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| HAWA KOUROUMA, : | |
|     Petitioner, : | PRISONER HABEAS CORPUS |
| : | 28 U.S.C. § 2241 |
| v. : | |
| : | CIVIL ACTION NO. |
| UNITED STATES ATTORNEY : | 1:07-CV-2859-CAM |
| GENERAL, et al., : | |
|     Respondents. : | |

**<u>MAGISTRATE JUDGE'S ORDER AND FINAL
REPORT AND RECOMMENDATION</u>**

Petitioner Hawa Kourouma has filed the instant petition pursuant to 28 U.S.C. § 2241, challenging the constitutionality of her continued detention by the United States Immigration and Customs Enforcement ("ICE")[1] as well as her removal order. The matter is presently before the Court on: the petition [Doc. 1]; Respondents' motion for an enlargement of time to file a response [Doc. 7];[2] the

---

[1] On March 1, 2003, the functions of the former Immigration and Naturalization Service ("INS") were transferred from the Department of Justice to three distinct agencies within the newly formed Department of Homeland Security: ICE, United States Customs and Border Protection, and United States Citizen and Immigration Services ("CIS"). <u>Cisse v. Gonzales</u>, 255 F. App'x 971, 972 n.1 (6th Cir. 2007).

[2] Respondent's motion for enlargement of time to respond [Doc. 7] is **GRANTED** <u>nunc pro tunc</u>, and the pleadings submitted on June 18, 2008 [Docs. 8, 9], are hereby accepted as filed.

AO 72A
(Rev.8/82)

response with attached brief and exhibits [Doc. 8]; Respondents' motion requesting an order authorizing Respondents to administer medical treatment to facilitate Petitioner's removal [Doc. 9]; and Respondents' motion to seal documents [Doc. 10].

I.   Background

Petitioner, a native and citizen of Guinea, was admitted as a B-2 non-immigrant visitor on November 13, 1990.  (Stevens Decl. ¶ 1).  According to the conditions of her B-2 visitor visa, Petitioner had permission to remain in the United States until January 1, 1991.  (Id.).  Petitioner, however, apparently remained in the United States beyond January 1, 1991.

On November 17, 1994, Petitioner filed a request for asylum.  (Stevens Decl. ¶ 4); [Doc. 3, Exh. B].  On July 25, 1995, Petitioner was served with a show cause order and notice of hearing.  [Doc. 3, Exh. C].  On October 18, 1995, after Petitioner failed to appear for the scheduled hearing, the Immigration Court entered an in absentia order of deportation, and Petitioner was ordered removed.  (Stevens Decl. ¶ 7); [Doc. 3, Exh. K].

On August 2, 2005, Petitioner filed an application for status as a temporary resident.  (Stevens Decl. ¶ 9); [Doc. 3, Exh. E].  On March 16, 2006, CIS issued

an Intent to Deny Petitioner's application. (Stevens Decl. ¶ 10); [Doc. 3, Exh. F]. Thereafter, Petitioner withdrew her application. (Stevens Decl. ¶ 11); [Doc. 3, Exh. G]. On April 1, 2007, Petitioner was taken into ICE custody. [Doc. 1, ¶ 7].

Petitioner filed a motion for a stay of deportation with ICE. (Stevens Decl. ¶ 12); [Doc. 3, Exh. H]. On April 18, 2007, an immigration judge granted Petitioner's motion to stay deportation pending a decision on her motion to reopen her case. (Stevens Decl. ¶ 14); [Doc. 3, Exh. J].

On May 2, 2007, the Immigration Court denied Petitioner's motion to reopen her proceedings. (Stevens Decl. ¶ 15); [Doc. 3, Exh. K]. Petitioner filed an appeal with the Board of Immigration Appeals, which was dismissed on September 19, 2007. (Stevens Decl. ¶ 16); [Doc. 3, Exh. L].

On October 18, 2007, Petitioner was scheduled to be removed to Guinea. (Stevens Decl. ¶ 18). Petitioner was escorted to Hartsfield-Jackson International Airport and was instructed to board the commercial aircraft in Atlanta, Georgia. (Id.). Petitioner, however, refused to board the aircraft. (Id.). Although Petitioner was instructed several times to board the aircraft, she continued to refuse to do so.

AO 72A
(Rev.8/82)

(Id.). Petitioner was escorted by ICE agents back to the Atlanta Field Office and was subsequently booked into the Atlanta Pretrial Detention Center. (Id.).[3]

While detained at the Atlanta Pretrial Detention Center, on November 20, 2007, Petitioner appeared to be severely depressed and suicidal. (Stevens Decl. ¶ 20). Petitioner pleaded with staff members not to keep her alive. (Id.).

On April 20, 2008, ICE again scheduled Petitioner for removal to Guinea. (Stevens Decl. ¶ 22). On May 14, 2008, Petitioner attempted to commit suicide by wrapping a pillowcase around her neck while detained at Columbia Care in Columbia, South Carolina. (Stevens Decl. ¶ 23). Thereafter, Petitioner was placed on suicide watch by the physicians at Columbia Care. (Id.). Based on Petitioner's suicide attempt, ICE cancelled Petitioner's May 21, 2008, scheduled removal to Guinea. (Stevens Decl. ¶ 24).

ICE currently is making arrangements for Petitioner's removal to Guinea, as ICE is currently in possession of Petitioner's valid travel documents and is ready and able to deport Petitioner. (Stevens Decl. ¶¶ 24, 25). Based on

---

[3] Petitioner filed the instant federal petition the next day, on October 19, 2007, through counsel. [Doc. 1]. The petition was initially filed in the United District Court for the Northern District of Alabama and was transferred to this Court on November 5, 2007.

AO 72A
(Rev.8/82)

Petitioner's previous statements that she would rather die than return to Guinea and her resistance during the previous removal attempt, however, ICE Deportation Officer Stevens believes that Petitioner will physically resist any efforts to remove her.  (Id.).

II.   Discussion

   A.   Stay of Removal

Petitioner first appears to ask this Court to review ICE's decision to remove her and issue a stay of removal.  Congress, however, has curtailed this Court's jurisdiction over immigration-related federal habeas corpus petitions.  See REAL ID Act of 2005 § 106(a), Pub. L. No. 109-13, 119 Stat. 231, May 11, 2005 (amending INA § 242, 8 U.S.C. § 1252).  Specifically, Congress has dictated that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e) [pertaining to expedited removal].

REAL ID Act § 106(a)(1)(B) (adding INA § 242(a)(5), 8 U.S.C. § 1252(a)(5)).  Further, "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be

5

available only" by direct petition for review in the relevant circuit court, INA § 242(b)(9), 8 U.S.C. § 1252(b)(9), and other than in such direct petition, "no court shall have jurisdiction, by habeas corpus under section 2241 . . . or any other habeas corpus provision . . . to review such an order or such questions of law or fact," REAL ID Act § 106(a)(2) (adding to INA§ 242(b)(9), 8 U.S.C. § 1252(b)(9)).  Thus, under the REAL ID Act, only the Courts of Appeals retain jurisdiction to consider challenges to orders of removal.  As such, this Court does not have jurisdiction over Petitioner's motion to stay removal.  See, e.g., Monteiro v. Attorney General of the United States, 261 F. App'x 368, 369 (3d Cir. 2008) (holding district court did not have jurisdiction to review motion to stay removal).  The same is true for Petitioner's request for this Court to review ICE's decision not to grant her discretionary relief based upon her illness.  See Sillah v. Lara, 275 F. App'x 822, 824 (11th Cir. 2008) (stating that under the REAL ID Act, only the courts of appeals retain jurisdiction to consider challenges to decisions pertaining to discretionary relief).  Accordingly, Petitioner's motion for stay of removal and/or discretionary relief should be denied.

     B.    Indefinite Detention

Next, Petitioner appears to challenge her continued detention pending removal. Put simply, Petitioner seeks to be released from detention while she awaits deportation

to Guinea. Respondents claim that Petitioner has not met her burden of demonstrating that she will not be removed in the reasonably foreseeable future; therefore, she has not established that she is entitled to relief.

The detention and release of aliens subject to an order of removal is governed by the provisions of 8 U.S.C. § 1231. Under § 1231(a), the Attorney General has 90 days to remove an alien from the United States after his or her order of removal becomes final. Detention during the 90-day removal period is mandatory. 8 U.S.C. § 1231(a)(2). Once the 90 day period has expired, the alien can be released, subject to specified conditions. 8 U.S.C. § 1231(a)(3). However, pursuant to 8 U.S.C. § 1231(a)(6), criminal aliens, inadmissible aliens, or other aliens considered a flight risk or a danger to the community may be detained beyond the removal period. 8 U.S.C. § 1231(a)(6). Nowhere does § 1231 mandate that such aliens be released.

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Supreme Court interpreted § 1231 to permit ICE to hold an alien subject to an order of removal for six months, but thereafter, the alien must be released if there is "no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u> at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence

7

sufficient to rebut that showing." Id.  In what amounts to a sliding scale test, the Court further noted that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

The Supreme Court in Zadvydas provided the following instructions for the consideration of habeas claims brought by detained aliens complaining of prolonged confinement pending removal:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal.  Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.  In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.  And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

Id. at 699-700 (citations omitted).

However, a detained alien subject to a final order of removal seeking release from detention pursuant to Zadvydas is not entitled to relief if she does not cooperate in effecting her removal.  See Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003)

8

(stating that a detained alien "cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); Saho v. Streiff, No. 06-00525-WS-B, 2008 WL 2622823 at *4 (S.D. Ala. June 26, 2008) (stating that "in considering whether there appears to be no significant likelihood of removal in the reasonably foreseeable future, [the] court must consider whether [the petitioner's] removal has been delayed or extended by his own efforts"); Baghdasaryan v. Chertoff, No. 1:07-CV-1618-TCB-JFK, 2007 WL 2127724 at *1 (N.D. Ga. July 25, 2007) (Batten, J.) ("When an alien acts to prevent his or her removal, the government may continue to detain the alien."); Wilson v. Zeithern, 265 F. Supp. 2d 628, 635 (E.D. Va. 2003) (noting that the petitioner's own actions in physically resisting removal and thereby delaying removal cannot render his detention unreasonably lengthy); Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (Carnes, J.) ("To the extent that the petitioner may hold, in part, the keys to his jail cell, he cannot complain, when he hides those keys, about his continued detention.").

ICE is currently in possession of Petitioner's travel documents and is ready and able to remove Petitioner. As set forth herein, however, Petitioner refused to board the aircraft when she was previously scheduled to be removed; she thereafter attempted to

commit suicide; and she has told ICE agents that she would rather die than return to Guinea. Because Petitioner's own actions have delayed her removal, she cannot demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future. See Pelich, 329 F.3d at 1060; Saho, 2008 WL 2622823 at *4; Baghdasaryan, 2007 WL 2127724 at *1; Wilson v. Zeithern, 265 F. Supp. 2d at 635; Fahim, 227 F. Supp. 2d at 1366. Accordingly, her indefinite detention claim is without merit and should be dismissed.

C. Motion Requesting an Order Authorizing Respondents to Administer Medical Treatment to Facilitate Petitioner's Removal

Respondents have filed a motion for an order authorizing medical treatment to assist with Petitioner's removal. [Doc. 9].[4] Petitioner's attorney has not responded to the motion, and Petitioner has not disputed that she has physically resisted deportation.

As an initial matter, the Government's motion is not any type of challenge to the removal order, and thus, this Court has jurisdiction to consider it. See, e.g., Saavedra De Barreto v. Immigration and Naturalization Service, 427 F. Supp. 2d 51, 54-55 (D. Conn. 2006) (stating that although the REAL ID Act eliminates district courts' habeas jurisdiction over review of orders of removal, the district courts retain jurisdiction over

---

[4] Although Respondents have argued the motion based upon the standards for a preliminary injunction, the Court finds such an analysis unnecessary.

10

matters independent of removal orders).  Moreover, INA § 279 provides that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provision of this subchapter."  8 U.S.C. § 1329.  Under INA § 241(f), if the Attorney General believes that an alien being removed requires personal care due to the alien's mental condition, the Attorney General may "employ a suitable person" who shall "accompany and care for the alien" until she arrives at her final destination.  8 U.S.C. § 1231(f)(1).

Respondents have submitted a declaration from Dr. Gustavo Cadavid, a Board Certified Psychiatrist, who has reviewed Petitioner's medical file.  (Cadavid Decl. ¶ 7).  In Dr. Cadavid's opinion, if Petitioner is not medically sedated during the removal procedure, she may be a threat to herself or others.  (Id. at ¶ 10).  If this Court grants Respondents' motion, INA § 241(f) would authorize the Attorney General to employ Dr. Cadavid to accompany and care for Petitioner during the removal process until she safely arrives in Guinea.  See 8 U.S.C. § 1231(f)(1).  The Court notes that Dr. Cadavid has indicated that upon this Court's authorization for ICE to medically sedate Petitioner, he will personally examine her prior to prescribing an appropriate sedative. (Cadavid Decl. ¶ 11).

       1.    <u>Due Process Analysis</u>

The Court finds that if Respondents were to sedate Petitioner in order to effectuate her removal, any such sedation would not violate her due process rights. In Washington v. Harper, 494 U.S. 210 (1990), the Supreme Court held that a prisoner has a liberty interest against being forcibly medicated with antipsychotic drugs. Harper, 494 U.S. at 221-22.  Importantly, in this case, this Court is not contemplating the use of antipsychotic drugs, but rather, "less controversial drugs like tranquilizers or sedatives."  Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984).

The Supreme Court in Harper held that a reasonableness standard should be applied when analyzing a challenged prison regulation and that courts should consider the following factors in any such analysis:  (1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) the impact on guards, other inmates, and prison resources; and (3) the absence of ready alternatives.  Harper, 494 U.S. at 224-25 (quotations and citations omitted).  Assuming that the Harper reasonableness analysis would apply to an ICE detainee and applying that analysis here, the Court finds that administering a noncontroversial sedative to Petitioner for the limited purpose of enforcing the removal order and ensuring the public's safety as well as her own well-being during her removal would meet the Harper test.  See United States v. Bechara, 935 F. Supp. 892,

12

894 (S.D. Tex. 1996) (finding that administration of sedatives by INS to a detainee for the purpose of enforcing a removal order met the Harper test), aff'd, 116 F.3d 478 (5th Cir. 1997).

    2.  Excessive Force Analysis

To the extent that this issue could be discussed pursuant to an excessive force analysis, Respondents' request still should be granted. When analyzing whether excessive force has been used on a prisoner, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 1-2 (1992). See also Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (noting that "[t]he law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain"). Here, Respondents seek to enforce a valid removal order, and rather than intending to harm Petitioner, Respondents are seeking to avoid harm to herself and others. Moreover, as in Bechara, supra, "[s]edation with noncontroversial drugs appears to be the least intrusive way to resolve this dispute." Bechara, 935 F. Supp. at 894. Thus, even under an excessive force analysis, Respondents' request should be granted.

13

As set forth previously herein, Petitioner has physically resisted deportation even after exhausting all of her legal remedies with the immigration courts. She has threatened danger to herself if deported. This Court finds the rationale of the Southern District of Texas in Bechara, supra, to be just as appropriate in the instant case: "[i]f the requested order is not granted, the result presumably would be that [Petitioner], by the simple expedient of physical resistance, remains above the law and can effectively prevent deportation." Bechara, 935 F. Supp. at 894.

III.   Conclusion

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the instant habeas petition [Doc. 1] be **DENIED** and that this action be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that the Government's motion requesting an order authorizing Respondents to administer medical treatment to facilitate Petitioner's removal [Doc. 9] be **GRANTED**. Should the District Judge adopt this Report and Recommendation, Respondents will be authorized to administer sedatives for the express and sole purpose of facilitating Petitioner's removal.

**IT IS ORDERED** that Respondent's motion for enlargement of time to respond [Doc. 7] is **GRANTED** nunc pro tunc.  The pleadings submitted on June 18, 2008 [Docs. 8, 9], are accepted as filed.

**IT IS FURTHER ORDERED** that Respondents' motion to seal documents [Doc. 10] is **GRANTED**.  The Clerk is **DIRECTED** to place the requested documents [Docs. 8, 9] under seal.

The Clerk is **FURTHER DIRECTED** to **TERMINATE** the reference to the Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED**, this 24th day of November, 2008.

*/s/ Janet F. King*
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A (Rev.8/82)